UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

JORGE VELAZQUEZ,                          :
        Plaintiff,                      :
                                :
        v.                              :      C.A. No. 11-535S
                                :
MICHAEL J. ASTRUE,                        :
COMMISSIONER OF SOCIAL SECURITY,          :
        Defendant.                      :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      This case presents the challenge of untangling the impact of a lifetime of alcohol and drug abuse from Plaintiff Jorge Velazquez's ("Plaintiff") residual functional capacity ("RFC") so as to comply with the congressional directive that the Social Security system should not subsidize addiction.  <u>Brown v. Apfel</u>, 71 F. Supp. 2d 28, 29 (D.R.I. 1999).  The matter is before the Court on Plaintiff's Motion for reversal of the decision of the Commissioner of Social Security (the "Commissioner"), denying Disability Insurance Benefits ("DIB") under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g) (the "Act").[1]  Plaintiff contends that the decision of the administrative law judge ("ALJ") was infected by errors of law and not supported by substantial evidence.  Defendant Michael J. Astrue ("Defendant") has filed a Motion for an order affirming the Commissioner's decision.

---

[1] Plaintiff ambiguously mentions in passing the Commissioner's denial of Supplementary Security Income ("SSI") benefits by defining the "Statement of the Issue" as whether Plaintiff was entitled to DIB <u>and SSI</u>, but makes no argument as to SSI.  ECF No. 11-1 at 1.  The Commissioner contends that Plaintiff's admission of an outstanding warrant for a felony precludes SSI benefits.  Tr. 73-77, 153; <u>see also</u> 42 U.S.C. § 1382(e)(4)(B).  As a result, SSI benefits were denied at the agency level and the record does not reflect that Plaintiff appealed the SSI denial within sixty days of receipt of the denial letter.  Tr. 73, 76.  The Court deems the argument waived.  <u>See</u> <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

This matter has been referred to me for preliminary review, findings and recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  I find that the ALJ properly performed the complex analysis required to isolate disabilities to which alcoholism and drug abuse are not material contributing factors, that the ALJ's determination of the limitations imposed on Plaintiff's ability to concentrate by his diabetes and his back pain is well supported by substantial evidence and that the ALJ correctly considered the side effects of Plaintiff's medications.  Accordingly, I recommend that Plaintiff's Motion to Reverse or Remand Commissioner's Decision (ECF No. 11) be DENIED and the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 12) be GRANTED.

## I.    **Background Facts**

Plaintiff Jorge Velazquez was born in 1972, was thirty-two at the time of his original alleged onset of disability on December 20, 2004, and was thirty-four at the time of amended onset on January 1, 2007.  Tr. 29, 41, 204.  He completed the ninth grade but received his GED and is able to communicate in English.  Tr. 29, 46.  His relevant diagnoses include diabetes mellitus, degenerative disc disease, major depressive disorder, substance abuse, Hepatitis C, liver disease and headaches.  Tr. 24, 39.  Plaintiff worked as a furniture laminator, painter, construction worker and an electronic assembly worker.  Tr. 63-64, 240.  In 2000 and 2003, his reported earnings were $26,026.04 and $10,523.75; in other years, he earned between $2,000 and $3,000.  Tr. 220-22.

Complicating this application is Plaintiff's lifelong substance abuse; he finally achieved complete sobriety in May 2009.  Born in Puerto Rico, he began drinking at age five in a home shared with thirteen siblings that he left at the age of sixteen.  Tr. 559, 563.  Besides alcohol, he has regularly used cannabis, cocaine and heroin.  Tr. 369, 559, 947.  His addiction to heroin

commenced at eighteen when he tried it to celebrate the birth of his son; its use exposed him to Hepatitis C; he quit "cold turkey" in 2005 after a relative tried to kill him by lacing the heroin with rat poison.  Tr. 563, 947.  Plaintiff's criminal history includes convictions for domestic abuse, drug possession and distribution.  Tr.  560, 569.

### A.      Pre-Sobriety Health

Plaintiff's pre-sobriety medical records[2] reflect a pattern of cycling through emergency rooms after binges and failed detox attempts.  In April 2006, he went to the emergency room after using cocaine twice a week and drinking heavily; at admission his GAF[3] score was 30 but went up to 65 four days later at discharge, after he had stabilized.  Tr. 433-34.  In April and May 2007, he landed in the emergency room four times for alcohol intoxication.  Tr. 342, 353, 766-67, 777, 782.  In October 2007, an ambulance brought him to Landmark Medical Center in a highly intoxicated state; he had not eaten in two days.  Tr. 532-33, 542.  He was back in the emergency room again a few days later, after imbibing large amounts of liquor daily and using crack cocaine the day before.  Tr. 786-87, 793.  He was voluntarily admitted to a treatment program but did not complete it.  Tr. 793-94.  In March 2008, the same month Plaintiff applied for DIB, he was taken to the emergency room at Landmark twice while intoxicated on both cannabis and alcohol.  During this period, at least one medical record labels Plaintiff as a "poor historian."  Tr. 296, 322-23, 326.

---

[2] Several of Plaintiff's medical records are missing the last page, which typically contains the physician's identity and signature.  The ALJ relied on these records and neither party raised the fact that they are incomplete.  To solve the problem of the missing identity of the treating source, the parties refer to "doctor" or "physician."  Since neither party objected to use of these incomplete records, the Court is similarly untroubled.

[3] The Global Assessment of Functioning ("GAF") "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Langley v. Barnhart, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) ("DSM-IV-TR ") at 32).  A GAF between 21-30 denotes serious impairment and inability to function in almost all areas.  DSM-IV-TR at 34.  A GAF between 61-70 is indicative of mild symptoms but generally functioning pretty well.  Id.; see also Bowden v. Astrue, No. CA 11-84 DLM, 2012 WL 1999469, at *3 n.4 (D.R.I. June 4, 2012).

Plaintiff began substance abuse treatment at Northern Rhode Island Community Services ("NRI") in May 2008. Tr. 558-61. The intake examiner observed that he was well-groomed, alert, oriented and had no difficulty concentrating. Tr. 574. Psychiatrist Dr. Doriana Morar performed mental status examinations[4] in May and July 2008; all findings were within normal limits. Tr. 558-61, 710-11, 713-14. Plaintiff's treatment continued throughout 2008 and early 2009; during some visits he was upbeat and in other visits he felt anxious because he had relapsed into heavy drinking. Tr. 404-11, 698, 700, 702, 704, 706, 860-61. Plaintiff's final relapse came May 2009, when he landed in the emergency room after drinking more than fifteen shots. Tr. 520. He requested detox and counseling – this time, unlike past attempts, the treatment worked: the medical record does not reflect alcohol or substance abuse after May 2009. Tr. 56, 516-17, 520-21, 562.

During the period affected by substance abuse, Plaintiff also faced physical challenges – back pain and diabetes.

In this application, Plaintiff claims he hurt his back in 1998 lifting chemicals and by 2001 had trouble working full time. Tr. 239, 241. The first back treatment in the record is from July 2007, when an MRI of Plaintiff's spine revealed a moderate broad-base disc bulge. Tr. 454. He went to Rhode Island Hospital repeatedly in 2007, complaining of back pain and decreased sensation in his left leg. Tr. 363, 366, 371-74, 747-52, 761-66, 795-99. He tried physical

---

[4] A mental status examination is an objective assessment of an individual's mental ability based on personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations . . . . Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Roberts v. Astrue, No. 11cv5296-BHS-JRC, 2012 WL 834337, at *3 (W.D. Wash. Feb. 16, 2012). A comprehensive mental status examination generally includes a narrative description of appearance, behavior and speech; thought process (e.g., loosening of associations); thought content (e.g., delusions); perceptual abnormalities (e.g., hallucinations); mood and affect (e.g., depression, mania); sensorium and cognition (e.g., orientation, recall, memory, concentration, fund of information and intelligence) and judgment and insight. See 20 C.F.R. § 404, Subpt. P., App. 1, § 12.00(D)(4).

.

therapy, which went well initially but he soon lost interest.  Tr. 364-65, 366, 373.  Despite his

back pain, Plaintiff was able to continue playing basketball regularly.  Tr. 363, 365, 370.  At a

September 2007 visit, he claimed increased back pain during a brief period of sobriety, but the

doctor observed no acute distress and found that he was sitting comfortably; significantly in light

of the credibility issues in this case, his physician wrote:

> [Plaintiff] has applied for SSI as he states he cannot work secondary to back pain;
> however, it should be noted that he is a rather active person, has been playing
> basketball without much difficulty exception to his ankle and his shoulder.

Tr. 368-70.  The doctor recommended that Plaintiff should find a job.  Tr. 370.

In December 2007, Plaintiff went to Rhode Island Hospital complaining of back pain,

although he was still playing basketball and the pain was manageable throughout the day.  Tr.

363.  Contradicting his DIB application, which claims he had not worked since January 2007, he

told the physician that he was working as a painter and recently bought his son a $400 video

game console and his daughter an expensive cell phone. [5]  Tr. 364.  Upon examination, Plaintiff

was in no acute distress and very comfortable, his gait was normal and there were no strength,

neurological or reflex deficits.  Id.  The physician was unable to recreate any of the neuropathic

pain that Plaintiff described, concluding that:

> [Plaintiff] is rather active with work as he is a painter but he is also asked to
> exercise on top of this.  Again, as noted, he is a very avid basketball player and is
> a very active person.

Tr. 364-65.

Plaintiff applied for DIB and SSI on March 14, 2008.  Tr. 21, 204.  A year later, in March

2009, just a few months before he achieved sobriety, a nurse practitioner at Thundermist

diagnosed him with diabetes mellitus type II.  Tr. 477.

---

[5] Despite this evidence in the record, the ALJ accepted Plaintiff's testimony that he did not "remember" whether he
had worked since January 1, 2007.  Tr. 41.

### B.      Post-Sobriety Health

Plaintiff's health improved dramatically with substance abuse treatment after his May 2009 binge.  At Gateway Healthcare, his initial mental status examination was unremarkable.  Tr. 832.  By discharge in February 2010, Plaintiff had achieved most of the treatment goals, including sobriety, addiction counseling and improving family relationships, his depression had stabilized, there were no signs of acute physical withdrawal and his GAF score rose to 62.  Tr. 839-42.  During the same period, Plaintiff also treated at NRI, where he responded positively to treatment by psychiatrist Dr. Stephen DiZio and several therapists.  Tr. 720-22, 724-31.  Dr. DiZio's notes indicate that he found Plaintiff calm, pleasant and cooperative, with well-organized thoughts and normal speech.  Tr. 688-89, 690, 692.  By August 2010, Plaintiff's hallucinations had improved and he was stable on medication.  Tr. 854.  During therapy, Plaintiff was found to be motivated and in good spirits; he rarely had difficulty concentrating; his sobriety was improving and he was future-oriented and logical in his thought process.  Tr. 592, 641-42, 671, 676, 681, 686-87, 904-07, 929.  At visits in February through August 2010, his therapist recorded unremarkable mental status examinations and found Plaintiff psychologically stable, in good spirits, future-oriented and with good concentration.  Tr. 895-97, 915, 920, 936-38, 942-44.

Beginning in June 2010, Dr. DiZio noted that Plaintiff had become more anxious because his girlfriend's son had moved into the home and was dealing drugs.  Tr. 852-54.  Through early 2011, Plaintiff's depression deepened due to worries about the girlfriend's drug-dealing son; otherwise, Dr. DiZio determined that Plaintiff was relatively psychiatrically stable and his mental status examination was mostly unremarkable.  Tr. 854, 856, 945-46.  Dr. DiZio's last treatment

note in the record observed that Plaintiff was calm, pleasant and cooperative, with well-organized thoughts.  Tr. 946.  By February 2011, his primary care physician noted that Plaintiff denied feeling down or depressed; he found Plaintiff stable on his medications.  Tr. 975-76.

Inconsistently with these treating sources and his own treatment notes, on April 5, 2011, the eve of the administrative hearing, Dr. DiZio completed a mental assessment form in which he opined that Plaintiff's depression prevented him from working and that substance abuse was not a contributing factor to his disability.  Tr. 985.  By contrast with Dr. DiZio's last treatment note in which he found Plaintiff's thoughts were well-organized, he was relatively stable and he could attend to his medical needs independently, Tr. 946, Dr. DiZio's box-checked form noted that Plaintiff had severe limitations on his ability to respond to work pressures and moderately severe limitations on his ability to perform complex or varied tasks.  Tr. 983-84.

After he regained sobriety, Plaintiff continued to complain of back pain.  An MRI in December 2009 revealed a small disc protrusion and lumbar spine radiculopathy.  Tr. 455.  In the same month, he visited New England Pain Associates, where his back was examined; the findings reflect tenderness, but no apparent distress, extremity motor strength, reflexes and sensation all normal and sensation intact.  Tr. 814-17.  He was given lumbar injections.  Tr. 807-08, 811, 814.  In June 2010, he took his back complaints to Dr. Stephen Saris at Neurosurgery Associates.  Tr. 843-46, 958-61.  Dr. Saris conducted a mental status examination that was within normal limits, with attention span and concentration normal.  Tr. 844, 960.  He also found that Plaintiff's back was normal, with the area of claimed discomfort displaying spinal "wear and tear" normal for a person of his age.  Dr. Saris concluded that surgery would not be appropriate and recommended a conservative treatment plan, including regular exercise.  Tr. 844-45.  Unsatisfied, Plaintiff went to Ocean State Pain Management in September 2010, complaining of

back pain. Tr. 948. Again, his neurological examination was normal; he was given another series of lumbar injections. Tr. 849, 950-56. During the same period when he was complaining of back pain to other providers, Plaintiff was reporting to his primary care providers at Thundermist that he exercised by walking seven days a week. Tr. 460-61, 463-64, 469-70, 473-74, 964-65, 969-70.

After he became consistently sober, it took some time to stabilize Plaintiff's diabetes, which was treated at Thundermist. Tr. 460-97, 964-82. In January 2010, he still had poor glycemic control and visited the emergency room with a blood sugar reading of 541. Tr. 460-86, 500, 964-77. However, by March 2010, the diabetes was under better control and by February 2011, his physician noted that he had had no recent hypoglycemic episodes. Tr. 463, 975-76.

## II.     Travel of the Case

Plaintiff applied for DIB and SSI on March 14, 2008, alleging disability as of December 20, 2004, due to diabetes mellitus, degenerative disc disease, major depressive disorder, substance abuse, Hepatitis C, liver disease and headaches. Tr. 24, 39, 204. Initially, he claimed he had no unsatisfied felony warrants; however, on July 19, 2008, Plaintiff amended his application to certify that he had an outstanding felony warrant, as a result of which the SSI application was denied. Tr. 73, 153, 204-05.

In connection with the DIB application, on July 15, 2008, a state agency psychologist, Dr. Paxson, completed Psychiatric Review Technique and Mental RFC forms, concluding that Plaintiff had a moderate limitation in maintaining concentration and suffered from affective and substance addiction disorders. Tr. 376, 386, 390. In March 2009, a state agency psychologist, Dr. Clifford, completed Psychiatric Review Technique and mental RFC forms, finding that Plaintiff had a substance abuse disorder and was impaired by major depression with psychotic

features.  Tr. 416.  Dr. Clifford largely agreed with Dr. Paxson's findings, noting that Plaintiff can "typ[i]cally complete [a] normal eight hour work day as he has done for years."  Tr. 429.  Dr. Clifford concluded that, both with and without considering Plaintiff's substance abuse, Plaintiff had moderate limitations on his concentration.  Tr. 427-29.

To develop the record on Plaintiff's physical complaints, on July 28, 2008, the Commissioner referred Plaintiff to Dr. Stoll for a consultative examination, which resulted in the opinion that Plaintiff's minor disc disease "does not appear to be disabling."  Tr. 395.  These conclusions were affirmed by a state agency non-examining physician.  Tr. 412.  In August 2008, a state agency non-examining physician, Dr. Bernardo, concluded that Plaintiff had low back pain that radiated in his left leg but could frequently lift ten pounds and stand or walk for six hours each in an eight-hour day.  Tr. 397-98.

The Commissioner reviewed and denied Plaintiff's DIB claim initially and on reconsideration.  Tr. 78-81, 83-85.  Plaintiff asked for a hearing before an ALJ.  Tr. 88.  It was originally scheduled for July 26, 2010, but he was picked up for an outstanding warrant and the hearing was eventually held on April 6, 2011.  A vocational expert, medical expert and Plaintiff, represented by counsel, testified before ALJ Martha Bowers.  Tr. 36-38.  At the hearing, Plaintiff amended his alleged onset date to January 1, 2007, after the ALJ pointed out that he earned approximately $4,700 in 2006.  Tr. 21, 40-41, 204-06, 220, 234.  On April 26, 2011, the ALJ found Plaintiff not disabled under the Act.  Tr. 18-35.  The Appeals Council denied Plaintiff's request for review on September 13, 2011, making the ALJ's decision the final decision of the Commissioner subject to judicial review.  Tr. 3-8.

III.    **The ALJ's Hearing and Decision**

At the hearing, Plaintiff's testimony focused on his substance abuse and his mental and physical impairments. He told the ALJ that diabetes prevented him from working because he has to stay "on top of [it]" and it sometimes makes him dizzy and that back pain, which he rated as nine out of ten without medication and eight out of ten with medication, forced him to leave several jobs. Tr. 41-42, 47-49. By contrast with what he told his primary care providers, he claimed he can walk, stand and sit for only ten to fifteen minutes at a time and cannot take walks. Tr. 44, 48, 53. He admitted alcohol abuse until May 2009, but denied cannabis use in the past five years, testimony that was impeached when the ALJ pointed out a positive cannabis toxicology screen from three years prior. Tr. 45-46. By contrast with the record references to living with his girlfriend, he told the ALJ that he is homeless. Tr. 42, 46, 53. By contrast with the findings on numerous pre- and post-sobriety mental status examinations, he claimed to have difficulty concentrating for more than a few minutes. Tr. 52. While conceding that his ability to control them has improved with sobriety, he said he continues to hear voices most of the time; they tell him "nothing good." Tr. 50-51. Based on references in the record to working under the table after the onset date, the ALJ pressed him about working after January 1, 2007; Plaintiff claimed he could not remember. Tr. 41. Plaintiff testified that he did not suffer any side effects from his medications. Tr. 43.

Dr. Stuart Gitlow, a specialist in psychiatry and addiction medicine, testified at the hearing as a medical expert to assess Plaintiff's mental impairments with and without substance abuse. Tr. 56-63. He concluded that, while actively abusing drugs and alcohol, Plaintiff had marked impairment of concentration, persistence and pace, but once sober, he had "no impairment of ADLs [Activities of Daily Living], social function or concentration, persistence and pace and there have been no episodes of decomp[ensation];" in short, he has become stable

10

and without significant mental impairment.  Tr. 60, 62.  His post-substance abuse depression has worsened at times because of the drug-dealing by his girlfriend's son, but Dr. Gitlow opined that depression is a normal reaction to such a challenge.  Tr. 58.  As to diabetes, Dr. Gitlow found no correlation between his mood and periods of unstable blood sugar and no evidence of frequent episodic difficulties despite some variability in blood sugar readings.  Tr. 61.  Dr. Gitlow opined that Plaintiff's diabetes could be addressed through diet and insulin.  Id.

Ruth Baruch, a vocational expert, testified that a worker of Plaintiff's age, education and work background, with a moderate limitation in concentration, persistence and pace, could perform Plaintiff's past work as a circuit board assembler and other light, unskilled production-type jobs.  Tr. 64-65.  However, if the limitation in concentration increased from moderate to moderately severe, it would prevent performance of any of the jobs she mentioned.  Tr. 67.

In her decision, the ALJ began with the finding that Plaintiff met the insured requirements of the Act through March 31, 2011.  She then embarked through the familiar five-step inquiry, using the dual track analysis – with and without substance abuse – mandated for a case like this one.  After concluding that Plaintiff was not engaged in substantial gainful activity at Step One, she moved to Step Two, finding that Plaintiff had the severe impairments of diabetes mellitus, degenerative disc disease, major depressive disorder and substance abuse, while rejecting Hepatitis C, liver disease and headaches as severe impairments, a determination that Plaintiff does not dispute.  Tr. 24.  At Step Three, after consideration of Listings 1.04 (disorders of the spine), 9.08 (diabetes mellitus), 12.04 and 12.09 (mental impairments), the ALJ determined that Plaintiff's impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 24-25.

At Step Four, the ALJ afforded substantial weight to Dr. Gitlow's conclusion that Plaintiff had a marked difficulty in maintaining concentration until he stopped substance abuse in May 2009. Tr. 28. Finding that Plaintiff had failed to present any evidence of discrete functional limitations from his physical ailments, the ALJ relied on the state agency medical consultants to determine that Plaintiff retained the RFC to perform less than a full range of light work, and had a moderately-severe limitation in maintaining concentration. Tr. 25, 28-29. At Step 5, the ALJ determined that, taking into account substance abuse, Plaintiff could not return to his past relevant work or other work that existed in the national economy and therefore is disabled within the meaning of the Act. Tr. 29-30.

The ALJ then repeated the five-step inquiry excluding the effects of substance abuse by focusing on the medical evidence from the period of sobriety. At Step Two, the ALJ determined that, after Plaintiff stopped substance abuse, his diabetes mellitus, degenerative disc disease and major depressive disorder were severe impairments. Tr. 30. At Step Three, the ALJ found that Plaintiff did not meet the criteria either for Listings 1.04 (disorders of the spine) and 9.08 (diabetes mellitus) or for any listing of mental impairments. At Step Four, the ALJ found that after Plaintiff stopped substance abuse, he retained the RFC to perform light work with the same physical restrictions as before but with lesser limitations on his mental restrictions, including only a moderate (compared to moderately severe) limitation in concentration, persistence and pace. Tr. 25, 31.

In determining the RFC, the ALJ found that Plaintiff's mental and physical impairments caused limitations, but that Plaintiff's claims about the intensity, persistence and limiting effects of the symptoms were not credible because they were inconsistent not only with the observations of various treating sources, but also with his testimony that he did chores, used public

transportation and shopped, as well as with record evidence that he walked, saw his child after school, handled his personal care and played basketball at the same time he complained of back pain. Tr. 33. The ALJ found that after Plaintiff stopped substance abuse in May 2009, his GAF scores and concentration improved, his mental status examinations were unremarkable and he denied feeling depressed except in response to appropriate situations. Tr. 32-33.

The ALJ declined to afford significant probative weight to the medical source statement filled in by Dr. DiZio the day before the hearing, in which he opined that Plaintiff was severely limited in his ability to understand, remember and carry out instructions and that substance abuse was not a contributing factor. She reasoned that its conclusions were inconsistent with, and not supported by, both the post-sobriety medical record and the evidence of Plaintiff's post-sobriety daily activities. Tr. 33. She also found Dr. Gitlow's opinion that Plaintiff had no limitations after he became sober inconsistent with the record as a whole. Tr. 33-34, 983-85. Instead, the ALJ accepted the opinion of the psychologist consultant, Dr. Clifford, who found that Plaintiff had a moderate limitation in concentration with or without taking substance abuse into account. Tr. 34. The ALJ buttressed this RFC determination with reference to diagnostic testing, clinical signs, activities of daily living and the state agency consultants. Tr. 34.

With this RFC, at Step 5, the ALJ found that Plaintiff could perform light work after he stopped substance abuse and concluded he could return to his past relevant work as a circuit board assembler, as well as other work that exists in the national economy. Tr. 34. Accordingly, she found that Plaintiff was not disabled within the meaning of the Act. Tr. 22, 35.

## IV.   **Issues Presented**

Plaintiff presents two arguments, which he contends establish that the Commissioner's decision is not supported by substantial evidence in the record and is infected by legal error:

1.  The ALJ committed substantial error by finding a moderate limitation in concentration because (a) the ALJ failed to fully consider the impact of Plaintiff's chronic back pain and (b) the ALJ failed to fully consider the impact of Plaintiff's diabetic condition.

2.  The ALJ committed substantial error by failing to consider the side effects of Plaintiff's many medications on his ability to work.

## V.    <u>Standard of Review</u>

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148,

14

153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not

the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's

complaints alone cannot provide a basis for entitlement when they are not supported by medical

evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20

C.F.R. §§ 404.1529(a), 416.929(a).

        The Court must reverse the ALJ's decision on plenary review, if the ALJ applies

incorrect law, or if the ALJ fails to provide the Court with sufficient reasoning to determine that

the law was applied properly.  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam);

accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary

where all of the essential evidence was before the Appeals Council when it denied review, and

the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart,

276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).

        The Court may remand a case to the Commissioner for a rehearing under Sentence Four

of 42 U.S.C. § 405(g).  Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).  To remand

under Sentence Four, the Court must either find that the Commissioner's decision is not

supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant

to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th

Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient

for district court to find claimant disabled).  Where the Court cannot discern the basis for the

Commissioner's decision, a Sentence Four remand may be appropriate to allow an explanation of

the basis for the decision.  Freeman v. Barnhart, 274 F.3d 606, 609-10 (1st Cir. 2001).  On

remand under Sentence Four, the ALJ should review the case on a complete record, including

any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for

ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a Sentence

Four remand, the Court enters a final and appealable judgment immediately, and thus loses

jurisdiction.  Freeman, 274 F.3d at 610.

## VI.   Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. §§ 416(I), 423(d)(1); 20 C.F.R. §§ 404.1505, 416.905.  The

impairment must be severe, making the claimant unable to do previous work, or any other

substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20

C.F.R. §§ 404.1505-1511, 416.905-911.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a

treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F.

Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. §§ 404.1527(c), 416.927(c).  If a treating

physician's opinion on the nature and severity of a claimant's impairments is well-supported by

medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with

the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v.

Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. §§

404.1527(c)(2), 416.927(c)(2).  The ALJ may discount a treating physician's opinion or report

regarding an inability to work if it is unsupported by objective medical evidence or is wholly

conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir.

1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the

determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R §§ 404.1527(c), 416.927(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

### B.    Developing the Record

Social Security proceedings are "inquisitorial rather than adversarial."  Sims v. Apfel, 530 U.S. 103, 110-11 (2000); Miranda v. Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975) (social security proceedings "are not strictly adversarial.").  The ALJ and the Appeals Council each have the duty to investigate the facts and develop the arguments both for and against granting benefits.  Sims, 530 U.S. at 110-11.  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Evangelista, 826 F.2d at 142.  Courts in this Circuit have

made few bones about the responsibility that the Commissioner bears for adequate development

of the record.  Id.; see Deblois v. Sec'y of Health & Human Servs., 686 F.2d 76, 80-81 (1st Cir.

1982); Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

## C.     The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§

404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, the claimant is

not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).  Second, if a claimant does not have any

impairment or combination of impairments that significantly limit physical or mental ability to

do basic work activities, then the claimant does not have a severe impairment and is not disabled.

Id. §§ 404.1520(c), 416.920(c).  Third, if a claimant's impairments meet or equal an impairment

listed in 20 C.F.R. Parts 404 and 416, Appendix 1, the claimant is disabled.  Id. §§ 404.1520(d),

920(d).  Fourth, if a claimant's impairments do not prevent doing past relevant work, the

claimant is not disabled.  Id. §§ 404.1520(e)-(f); 416.920(e)-(f).  Fifth, if a claimant's

impairments (considering RFC, age, education and past work) prevent doing other work that

exists in the local or national economy, a finding of disabled is warranted.  Id. §§ 404.1520(g),

416.920(g).  Significantly, the claimant bears the burden of proof at Steps One through Four, but

the Commissioner bears the burden at Step Five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144

(D. Mass. 2003) (five step process applies to both DIB and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently

severe, the ALJ must consider the combined effect of all of the claimant's impairments and must

consider any medically severe combination of impairments throughout the disability

determination process.  42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and

well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant must prove the existence of a disability on or before the last day of insured status for the purposes of disability benefits.  Deblois, 686 F.2d at 79; 42 U.S.C. §§ 416(i)(3), 423(a), 423(c).  If a claimant becomes disabled after loss of insured status, the claim for disability benefits must be denied despite disability.  Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

### D.    Substance Abuse

In 1996, Congress amended the Act to deny disability benefits if alcohol or drug abuse comprises a contributing factor material to the determination of disability.  42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(b); Brown v. Apfel, 71 F. Supp. 2d at 29.  If the claimant is under a disability and there is medical evidence of alcoholism or substance addiction, the ALJ must determine the impact of the addiction on the claimant's disability.  See 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535(a).  "The 'key factor' to be considered, in fact the only factor mentioned in the regulations, is whether the claimant would still be disabled absent the drug addiction or alcoholism."  Id. at 35; see also 20 C.F.R.§ 404.1535(b)(1).

The ALJ must first conduct the five-step inquiry taking into account all of the claimant's impairments, including drug and alcohol addiction.  Brown v. Apfel, 71 F. Supp. 2d at 29.  If the ALJ finds the claimant is not disabled, the process ends.  See Brueggemann v. Barnhart, 348 F.3d 689, 694 (8th Cir. 2003); Williams v. Barnhart, 338 F. Supp. 2d 849, 862 (M.D. Tenn. 2004).  However, if the ALJ finds the claimant disabled, the analysis "must go one step further" and determine whether the claimant would still be disabled if the claimant stopped abusing drugs or alcohol.  Brown v. Apfel, 71 F. Supp. 2d at 29.  Congress mandated the extra step because "it

is important . . . not to have the Social Security System subsidize [substance abuse]." Brown v. Apfel, 71 F. Supp. 2d at 29.  Even so, an impairment caused by past substance abuse may be considered disabling so long as the impairment remains after the claimant stops substance abuse. Pettit v. Apfel, 218 F.3d 901, 903 (8th Cir. 2000); Hamison v. Halter, 169 F. Supp. 2d 1066, 1069 (D. Minn. 2001).

The question of materiality of drug addiction or alcoholism is reserved to the Commissioner.  Ambrose v. Astrue, No. 07-84-B-W, 2008 WL 648957, at *5 (D. Me. Mar. 5, 2008).  The Commissioner may base the materiality finding on record evidence during periods of sobriety.  Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 126-27 (2d Cir. 2012); Schell v. Astrue, 2012 WL 745024, at *6 (D. Mass. Mar. 7, 2012); see also Vester v. Barnhart, 416 F.3d 886, 891 (8th Cir. 2005) (it is within the ken of the Commissioner to make a finding that the claimant is not disabled if the Commissioner is presented with evidence that a claimant has demonstrated the ability to work during periods of sobriety).  When the claimant never achieves sobriety, the materiality determination will necessarily be hypothetical and therefore more difficult, but the claimant cannot avoid a finding of no disability simply by continuing substance abuse.  Evans v. Astrue, CA 11-146S, 2012 WL 4482354, at *2 (D.R.I. Sept. 26, 2012).

The claimant bears the burden of proving that alcoholism or drug addiction is not a contributing factor material to the disability determination. See Cage v. Comm'r of Soc. Sec., 692 F.3d 118, 123 (2d Cir. 2012) (noting that, with the possible exception of the Tenth Circuit Court of Appeals, all federal courts that have considered the question have held the claimant bears the burden of proving substance abuse is not material to the determination of disability); Evans v. Astrue, CA 11-146S, 2012 WL 4482354, at *2 (D.R.I. Sept. 26, 2012) (claimant is the party best suited to demonstrate disability in the absence of substance abuse).

### E.      Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate

specific and adequate reasons for doing so, or the record must be obvious as to the credibility

finding.  See Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986);

Rohrberg, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated

credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at

195.

A lack of a sufficiently explicit credibility finding becomes a ground for remand when

credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349,

1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility

determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such

testimony or the implication must be so clear as to amount to a specific credibility finding."

Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d

1251, 1255 (11th Cir. 1983)).

### F.      Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36.

Congress has determined that a claimant will not be considered disabled unless medical and

other evidence (e.g., medical signs and laboratory findings) is furnished showing the existence of

a medical impairment which could reasonably be expected to produce the pain or symptoms

alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about

symptoms, including pain, and determine the extent to which the symptoms can reasonably be

accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  In

determining whether the medical signs and laboratory findings show medical impairments which

reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's

six-part pain analysis and consider the following factors:

> 1. The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> 2. Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> 3. Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> 4. Treatment, other than medication, for relief of pain;
>
> 5. Functional restrictions; and
>
> 6. The claimant's daily activities.

Avery, 797 F.2d at 29; Gullon v. Astrue, No. 11-cv-099ML, 2011 WL 6748498, at *5-6 (D.R.I.

Nov. 30, 2011).  An individual's statement as to pain is not, by itself, conclusive of disability.  42

U.S.C. § 423(d)(5)(A).  Guidance in assessing the credibility of the claimant's statement is

provided by the Commissioner's 1996 ruling.  SSR 96-7p, 1996 WL 374186 (July 2, 1996).

Credibility of an individual's statement about pain or other symptoms and their functional effects

is the degree to which the statement can be believed and accepted as true; in making this

determination, the ALJ must consider the entire case record and may find that all, only some, or

none of an individual's allegations are credible.  Id. at *4.  One strong indication of the

credibility of an individual's statements is their consistency, both internally and with other

information in the record.  Id. at *5-6.

VII.   **Application and Analysis**

  A.   **Limitations on Plaintiff's Ability to Concentrate**

Plaintiff's attack on the ALJ's finding of a moderate limitation on concentration because it was made without consideration of back pain and diabetes is a Hail Mary pass easily batted down by overwhelming evidence from virtually every treating source.  The record is replete with mental status examinations[6] and other medical evidence establishing that Plaintiff had a relatively normal ability to concentrate, both before and after he achieved sobriety.  For example, in June 2010, in connection with a visit for back pain, neurosurgeon Dr. Saris performed a mental status examination and found that Plaintiff's attention span, concentration and orientation were normal – it is axiomatic that back surgeon's assessment of concentration took back pain into consideration.  Tr. 844.  Further, this mental status examination was performed after Plaintiff's diabetes had stabilized, a diagnosis of which Dr. Saris was aware.  Tr. 843.  Similarly, in May 2009, Allen McLeod, LCDP, found that Plaintiff had no difficulty concentrating and Stephanie Palazzo, BA, CCSP, observed in February, June, July and August 2010 that Plaintiff was focused and his concentration was good.  Tr. 666, 832, 915, 920, 938, 942-44.

Even before Plaintiff regained sobriety, medical sources consistently opined that Plaintiff had good concentration.  For example, in May 2008, Dr. Morar opined that Plaintiff's attention and concentration were fair and that his "[t]hought process and content are spontaneous, logical, relevant, [with] no formal thought disorder."  Tr. 560.  Based on all of these sources, Dr. Clifford, the state agency psychologist, concluded in March 2009 that Plaintiff had only moderate limitations in his ability to maintain attention and concentration.  Tr. 427-29.  The ALJ's reliance on this non-examining source, which is so well supported by the record, is not error.  See Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (ALJ's

---

[6] A mental status examination is an objective measurement of a person's ability to concentrate, among other functions.  See Dimauro v. Astrue, No. 10cv5593-RBL-JRC, 2011 WL 6013811, at *6 (W.D. Wash. Nov. 8, 2011); see also n.4 supra.

RFC determination may be based on entire record and common-sense judgments based on medical findings, not just RFC forms); 20 C.F.R. §§ 404.1545(a), 1546(c).

The contrary evidence after Plaintiff gained sobriety is Dr. DiZio's mental RFC form, completed the day before the disability hearing. The ALJ correctly observed that Dr. DiZio's opinion is contradicted by his own treatment notes that repeatedly opine that Plaintiff's thoughts were well organized and that anxiety was appropriately related to his girlfriend's son's drug dealing; Dr. DiZio's mental status examinations repeatedly yielded unremarkable findings. Tr. 688, 692, 852-53, 854, 856, 945; see also Costa v. Astrue, 565 F. Supp. 2d 265, 271 (D. Mass. 2008) (no error for ALJ to disregard disability opinion of treating physician inconsistent with his contemporaneous treatment notes); Quiles v. Barnhart, 338 F. Supp. 2d 363, 374-75 (D. Conn. 2004) (court baffled by inconsistencies between doctor's treatment notes and her RFC evaluation). The fatuousness of Plaintiff's argument that only Dr. DiZio is correct about Plaintiff's inability to concentrate because only he considered back pain[7] is contradicted on the face of the form, where Dr. DiZio responded "N/A" to the question, "[i]f pain is present, how does it affect the claimant's ability to function?" Tr. 984.

The ALJ's RFC is well supported by the medical evidence – though not by Plaintiff's subjective complaints – regarding Plaintiff's back pain. The decision lists the multitude of physicians and providers who examined Plaintiff and found that, at most, he was in mild distress, had good strength and his sensations were normal. See Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (affirming ALJ's findings on back pain credibility based on treatment and diagnoses). No treating source opined to any functional

---

[7] In support, Plaintiff points to Dr. Gitlow's comment at the hearing that Dr. DiZio's conclusions, which are so inconsistent with the "file," conceivably are based on consideration of back pain. See Tr. 62. This speculation is of no moment because it is contradicted at the end of the form by Dr. DiZio's indication that pain does not affect Plaintiff's ability to function. See Tr. 984.

restrictions arising from back pain or back issues.  See Costa, 2011 WL 1155263, at *8 (proper

to discount allegations of pain when no evidence of functional restrictions).   In June 2010, Dr.

Saris concluded that his back was normal and, at most, he had "wear and tear" normal for a

person of his age.  Tr. 845.  Plaintiff's lack of credibility in complaining about his back is also

well supported by the medical sources; for example, a back examination in December 2007

could not recreate the neuropathic pain Plaintiff described.  Tr. 364-65.

        The ALJ's finding that Plaintiff's testimony that his back pain prevented him from

working was not credible is similarly well supported by substantial evidence.  In late 2007,

months after the onset of disability, Plaintiff continued to play basketball on a regular basis and

was an active person.  Tr. 363-65, 370, 533, 761-65, 795.  Plaintiff himself told one provider that

his pain was manageable throughout the day.  In May 2008 and May 2009, Plaintiff reported that

he walked most of the day, saw his child after school, shopped in stores, used public

transportation and handled his own finances.  Tr. 33, 254-61, 271-78.  At the hearing, Plaintiff

claimed he could barely walk, but the treatment notes from Thundermist indicate that he was

walking seven days a week after regaining sobriety.  Jackson v. Astrue, No. 02:08 cv 1407, 2009

WL 1935873, at *6 (W.D. Pa. July 2, 2009) (plaintiff's recent statements regarding persistence

of back pain not credible based on medical evidence in record).  The only medical source who

opined on physical limitations arising from back pain found it not disabling.  Tr. 397-98.

        Plaintiff's argument that his diabetes increased the limitation on his ability to concentrate

is similarly lacking in any record support.  The ALJ properly discounted Plaintiff's claim that

uncontrolled diabetes prevented him from working.  Tr. 31.  Plaintiff is simply wrong that the

ALJ ignored his high reading in January 2010 – to the contrary, she specifically considered the

period of "poor glycemic control" in January 2010, but also noted that by March 2010, diabetes

was "under better control." Tr. 27. This finding is well grounded in the medical sources. Tr.

31-33, 475, 477, 473-74, 500, 505, 964, 975 (diabetic control adequate; by February 2011,

Plaintiff had no recent hypoglycemic episodes and appeared alert and oriented). The failure to

mention the high reading (541) in January 2010 is beside the point – the ALJ can consider the

evidence in the record without naming every factoid in the written decision. See N.L.R.B. v.

Beverly Enters.-Mass., Inc., 174 F.3d 13, 26 (1st Cir. 1999); see also Coggon v. Barnhart, 354 F.

Supp. 2d 40, 55 (D. Mass. 2005) (citing Rodriguez v. Sec'y of Health & Human Servs., No. 90-

1039, 1990 WL 152336, at *1 (1st Cir. September 11, 1990)) (holding that a "hearing officer

need not 'expressly refer to each document in the record, piece-by-piece'").

The ALJ wrote a well-reasoned decision that thoughtfully chronicles Plaintiff's new lease

on life after he regained sobriety in May 2009. There is no error in the determination that

Plaintiff has only a moderate limitation with respect to his ability to concentrate; that finding is

well supported by substantial evidence.

### B.       Side Effects from Plaintiff's Medications

Plaintiff's argument that the ALJ erred by failing to consider the dosages or side effects

of his prescribed medications is equally specious. See 20 C.F.R. § 404.1529; SSR 96-8p, 1996

WL 374184 (July 2, 1996). The ALJ inquired about that precise topic at the hearing:

> Q      Do you take any medications?
> A      Yes
> Q      What do you take?
> A      I take tramadol . . . gabapentin, Zyprexa, Naltrexon . . .
> Q      Do you have any side effects from your medications?
> A      No.

Tr. 42-43; see also Tr. 288, 713, 807 (various reports by Plaintiff to treating sources that he did

not feel side effects from medications). It is legally permissible for the ALJ to rely on such an

answer, especially where Plaintiff was represented by counsel at the hearing. Wainscott v.

Astrue, C/A No. 1:09-1522-JFA-SVH, 2010 WL 3521717, at *25 (D.S.C. Aug. 9, 2010) (no

error to rely on claimant's testimony of no side effects). The only medical evidence on the topic

is a comment by Dr. Saris warning about the potential for side effects, not opining to the

existence of side effects. Tr. 843, 975. Such a passing reference to a potential impairment

without any objective medical evidence to support an actual effect does not trigger any duty to

develop the record. See Givens v. Astrue, 251 Fed. App'x 561, 568 (10th Cir. 2007); Johnson v.

Barnhart, 434 F.3d 650, 658 (4th Cir. 2005) (citing Burns v. Barnhart, 312 F.3d 113, 131 (3d Cir.

2002)) (side effects from medications not disabling unless record corroborates serious functional

limitations); Osenbrock v. Apfel, 240 F.3d 1157, 1164 (9th Cir. 2001) (no error where medical

records included only passing reference to side effects of medications). Ironically, even the

mental assessment completed by Dr. DiZio, which Plaintiff relies on so heavily to argue that he

cannot concentrate, states "N/A" to the question, "[w]hat are the side-effects, if any, if the

claimant is taking any medication(s)?" Tr. 984.

The ALJ's failure to develop the record regarding the side effects of Plaintiff's

medications is not error.

## VIII. Conclusion

The Court finds that the ALJ did not err in assessing the impact of Plaintiff's back pain

and diabetes on his ability to concentrate and in not developing the record with respect to the

side effects of Plaintiff's medications. Accordingly, I recommend that Plaintiff's Motion to

Reverse (ECF No. 11) be DENIED, that Defendant's Motion to Affirm (ECF No. 12) be

GRANTED and that final judgment enter in favor of Defendant.

Any objections to this Report and Recommendation must be specific and must be filed

with the Clerk of Court within fourteen (14) days after the date of service. See Fed. R. Civ. P.

72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver

of the right to review by the district court and of the right to appeal the district court's decision.

See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v.

Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 22, 2013